IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Assurance Company of America, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:13-CV-179 |
| | ) |
| vs. | ) |
| | ) |
| Lawrence Waldman, <u>et al.</u>, | ) |
| | ) |
| Defendants. | ) |

O R D E R

This matter is before the Court on Plaintiff Assurance Company of America's motion for judgment on the pleadings (Doc. No. 12) and renewed motion for judgment on the pleadings (Doc. No. 30).  For the reasons that follow, Plaintiff's motion for judgment on the pleadings is **MOOT**; Plaintiff's renewed motion for judgment on the pleadings is well-taken and is **GRANTED.**

I. Background

The dissolution of the Waldman, Pitcher & Company accounting firm in October 2009 spawned a flurry of lawsuits among its former principals.  After Waldman, Pitcher & Company dissolved, Defendant Lawrence Waldman formed another accounting firm, Waldman & Company C.P.A.'s, P.S.C.  Likewise, Defendants Kenneth Pitcher and Michael Enders formed their own accounting firm, Pitcher & Enders.

In March 2011, Pitcher and Enders sued Waldman and Waldman & Company in federal district court alleging that Waldman knowingly issued false Forms 1099 which

substantially overstated their income in order to gain leverage over them in other disputes. The parties refer to this lawsuit as "the 1099 Litigation."

In April 2010, Waldman sued Pitcher, in a case that was removed to federal district court under ERISA, alleging that Pitcher breached his fiduciary duty as trustee of the Waldman, Pitcher & Company Profit Sharing Trust in distributing plan assets to the participants upon dissolution of the company. Waldman was eventually permitted to voluntarily dismiss his claims in that case without prejudice. Pitcher, however, then sued Waldman and the Waldman & Company Profit Sharing Trust, in another case that was removed to federal district court, on behalf of himself and as trustee of the Waldman, Pitcher & Company Profit Sharing Trust, to recoup the attorney's fees he incurred defending Waldman's breach of fiduciary duty lawsuit. The parties refer to this recoupment action as "the Trust Litigation."

Pitcher and Enders filed suit for the judicial dissolution of Waldman, Pitcher & Company in 2009. That lawsuit ended in October 2009 by way of a settlement agreement among the parties that included a non-disparagement clause. In May 2010 Waldman sued Pitcher and Enders in yet another state court lawsuit under theories not disclosed on the current record. In any event, in this lawsuit, the parties entered into a protective order which prohibited any party from disclosing information designated "confidential" to third parties. The protective order also stipulated that if a court or administrative agency subpoenaed or ordered the production of confidential information from a party, that party would promptly notify the party who originally produced the confidential information and give that party an opportunity to quash the order or

2

subpoena before producing the confidential information. The parties eventually settled this lawsuit.

After the parties settled the May 2010 lawsuit, Pitcher and Enders claimed to have learned for the first time that Waldman voluntarily disclosed information designated as confidential in that case to the IRS for the purpose of causing them difficulties with the IRS. Pitcher and Enders also claimed that Waldman disparaged them in written correspondence with the IRS. Consequently, Pitcher and Enders sued Waldman in state court alleging that Waldman's actions and correspondence with the IRS breached the non-disparagement clause of the dissolution settlement agreement and the protective order the parties entered into in the May 2010 litigation.[1] The parties refer to this last lawsuit as "the Contract Litigation."

Plaintiff Assurance Company of America ("ACA") issued a commercial general liability and commercial umbrella liability insurance policy to Waldman & Company and Waldman, Pitcher & Company on August 14, 2010. The policy has been renewed annually through August 14, 2012. Amended Complaint ¶ 9. Generally speaking, Coverage A of the policy insures against losses for "bodily injury" or "property damage" caused by an "occurrence" during the policy period. Coverage B of the policy insures against losses due to "personal and advertising injury." In December 2012, Waldman tendered the 1099 Litigation, the Trust Litigation, and the Contract Litigation to ACA for defense and indemnification. ACA, however, declined to provide a defense or indemnity on the grounds that the 1099 Litigation, the Trust Litigation, and the Contract

---

[1] This would be the sixth lawsuit between these former partners for those keeping score.

Litigation are not covered by the policy because they do not seek recovery for bodily injury" or "property damage" caused by an "occurrence." Complaint Ex. 5 (Doc. No. 1-5).

ACA filed the instant lawsuit seeking a declaratory judgment that it has no duty to defend or indemnify Waldman or Waldman & Company in the 1099 Litigation, the Trust Litigation, and the Contract Litigation. Waldman and Waldman & Company counterclaimed ACA for breach of contract and its alleged bad faith refusal to defend and indemnify the three lawsuits. The Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between ACA and the Defendants and the amount in controversy exceeds $75,000.[2]

ACA now moves for judgment on the pleadings on its amended complaint for a declaratory judgment pursuant to Rule 12(c) of the Federal Rules of Civil Procedure as well as on Waldman's counterclaims.[3] In response, Waldman concedes that the 1099 Litigation is not covered by the policy. Waldman, however, contends that the other two lawsuits fall within the policy's terms.

---

[2] Pursuant to the Court's order, ACA cured defective jurisdictional allegations in its amended complaint. Doc. No. 26.

[3] ACA's first motion for judgment on the pleadings (Doc. No. 12) is moot because it is directed at the original complaint. See 6 Wright, et al., FEDERAL PRACTICE & PROCEDURE § 1476 (3rd ed. 2013) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading.") (internal footnote omitted).

II. Rule 12(c) Standard of Review

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is analyzed under the same standard of review employed for a motion to dismiss under Rule 12(b)(6). Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295 (6th Cir. 2008). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted). A motion brought pursuant to Rule 12(c) is appropriately granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." Id. at 582 (internal citation and quotation marks omitted).

III. Analysis

The parties agree that Ohio law applies to resolve this insurance coverage dispute. The Sixth Circuit has succinctly explained the applicable process in Ohio for interpreting insurance contracts:

> Under Ohio law, questions regarding the extent of coverage provided by an insurance policy "are determined, in the first instance, by an examination of the relevant insurance documents, utilizing therein the familiar rules of construction and interpretation applicable to contracts generally." Gomolka v. State Auto. Mut. Ins. Co., 70 Ohio St.2d 166, 436 N.E.2d 1347, 1348 (Ohio 1982) (holding that an ambiguous automobile insurance policy provided underinsured motorist coverage); see also Hybud Equip. Corp. v. Sphere Drake Ins. Co., 64 Ohio St.3d 657, 597 N.E.2d 1096, 1102 (Ohio 1992) (noting that the Ohio Supreme Court "has consistently held that insurance contracts must be construed in accordance with the same rules as other written contracts"). Where the language is clear and unambiguous, courts "must enforce the contract as written and give the words their plain and ordinary meaning." Cincinnati Indem. Co. v. Martin, 85 Ohio St.3d

> 604, 710 N.E.2d 677, 679 (Ohio 1999) (upholding a declaratory judgment that a homeowners' insurer had no duty to defend the insured in a wrongful death suit).
>
> Language reasonably susceptible to more than one interpretation, however, is "construed strictly against the insurer and liberally in favor of the insured." King v. Nationwide Ins. Co., 35 Ohio St.3d 208, 519 N.E.2d 1380, 1383 (Ohio 1988) (discussing Ohio's "well-settled" contra proferentem rule). Ohio courts have strongly emphasized this rule in the interpretation of exclusions from liability. See United States Fid. & Guar. Co. v. Lightning Rod Mut. Ins. Co., 80 Ohio St.3d 584, 687 N.E.2d 717, 719 (Ohio 1997) (noting the long-standing rule in Ohio that "an exclusion from liability must be clear and exact in order to be given effect") (quotation marks omitted).

Monticello Ins. Co. v. Hale, 114 Fed. Appx. 198, 201 (6th Cir. 2004).

The parties agree that Coverage B, concerning losses due to "personal and advertising injury," is the only section of the policy which may provide coverage of the two lawsuits at now at issue in this case.

### A. The Policy Does Not Cover The "Contract Litigation"

As stated earlier, Pitcher and Enders sued Waldman for allegedly breaching the non-disparagement clause of the 2009 dissolution agreement and for allegedly violating the protective order entered in the May 2010 lawsuit. The complaint in that lawsuit characterizes each of the six causes of action as a breach of contract claim although Pitcher and Enders's casting of the alleged violations of the protective order as contract claims seems dubious as a matter of state law. See State ex rel. Conkle v. Sadler, 792 N.E.2d 1116, 1119-20 (Ohio 2003)(indicating that the remedy for an alleged violation of a protective order is a motion to show cause why the party should not be held in contempt filed with the court that issued the protective order). In any event, as Waldman argues, at first blush the policy appears to covers these claims because, in relevant part, "personal and advertising injury" is defined as:

6

> d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> e. Oral or written publication of material that violates a person's right of privacy[.]

Doc. No. 30-3, at 85 (Commercial General Liability Coverage Form, §§ V(14)(d) &(e)).  These sections appear to provide coverage to Waldman because the Contract Litigation involves Waldman's alleged disparagement of Pitcher and Enders and his alleged disclosure of information in which Pitcher and Enders have privacy interests.  See, e.g., Motorists Mut. Ins. Co. v. Dandy-Jim, Inc., 912 N.E.2d 659, 664 (Ohio Ct. App. 2009) (interpreting "personal and advertising injury" in commercial general insurance policy and stating that the "right of privacy" means the individual's "right to prevent disclosure of personal information to others").

The Court finds, however, that another section of the commercial general liability policy specifically excludes coverage of these claims.  Section I(B) excludes coverage of "personal and advertising injury":

> (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";
>
> . . .
>
> (6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement"[.]

Doc. No. 30-3, at 76 (Commercial General Liability Coverage Form §§ I(B)(2)(a)(1) & (6).  The first clause clearly excludes coverage for the insured's intentional, knowing, and illegal conduct, see Westfield Cos. v. O.K.L. Can Line, 804 N.E.2d 45, 52 (Ohio Ct.

7

App. 2003), and the second clause clearly excludes coverage of damages caused by the insured's breach of contract.

According to Counts 1, 2, and 3 of the Contract Litigation complaint, Waldman allegedly violated the protective order on three separate occasions by disclosing information designated as confidential to the IRS.  Moreover, the complaint indicates that Waldman did so knowingly.  For instance, the complaint alleges that two documents that Waldman disclosed to the IRS were stamped "confidential."  Doc. No. 20, at 4, 5.  The complaint also alleges that Waldman disclosed depositions to the IRS containing confidential information.  Id. at 6.  Additionally, each of the counts alleges that Waldman disclosed confidential information without providing the notices required by the protective order and that he provided the information to the IRS in bad faith.  Id. at 5, 6, 7.  Collectively then, the complaint indicates that Waldman caused "personal and advertising injury" "with the knowledge that the act would violate the rights" of Pitcher and Enders under the protective order.  In other words, as ACA argues in its brief, there is no coverage for these claims because the injuries alleged by Pitcher and Enders are not the result of Waldman's fortuitous acts.  See Westfield Ins. Co. v. Custom Agric. Sys., Inc., 979 N.E.2d 269, 274 (Ohio 2012) (stating that "fortuity . . . is fundamental to insurance coverage"); Chiquita Brands Int'l, Inc. v. National Union Ins. Co., 988 N.E.2d 897, 900 (Ohio Ct. App. 2013) ("Liability insurance does not exist to relieve wrongdoers of liability for intentional, antisocial or criminal conduct.").  Therefore, these alleged acts of Waldman are not covered under the policy.

According to Counts 4, 5, and 6 of the complaint, Waldman allegedly breached the non-disparagement clause of the 2009 dissolution agreement on three separate

8

occasions in correspondence with the IRS. Consequently, the "personal and advertising injury" Pitcher and Enders allegedly suffered as a result of Waldman's actions "aris[e] out of a breach of contract." Therefore, the injuries related to Counts 4, 5, and 6 are not covered by the policy.

### B. The Policy Does Not Cover The Trust Litigation

As described above, Waldman sued Pitcher in his capacity as trustee of the Waldman, Pitcher & Company Profit Sharing Plan for an alleged breach of fiduciary duty related to his distribution of plan assets. Waldman ultimately voluntarily dismissed that case. Pitcher then sued Waldman under ERISA and state law to recover the attorney's fees he incurred defending Waldman's breach of fiduciary duty suit under a provision in the profit sharing trust requiring Waldman, Pitcher & Company to "indemnify the Trustee against any liabilities and expenses, including attorney's fees . . . incurred in connection with any action taken by the Trustee in good faith in accordance with the terms of this Agreement, written instructions or directions of the Employer or the Plan Administrator . . ." Doc. No. 30-2, at 5.

> With regard to employee benefits liability, the policy states that ACA agrees:
>
> To pay on your behalf all sums which you shall become legally obligated to pay on account of any claim made against you by an <u>employee, former employee, or the beneficiaries or legal representatives thereof</u> and <u>caused by any negligent act, error, or omission</u> of yours, or any other person for whose acts your are legally liable in the administration of your Employee Benefits Programs.

Doc. No. 30-3, at 95 (Employee Benefits Liability Insurance § I) (emphasis added).

The policy does not apply to the Trust Litigation for at least two reasons.

9

First, Pitcher's suit to recover the attorney's fees he incurred is not a claim by an "employee, former employee, or the beneficiaries or legal representatives thereof." Rather, Pitcher's suit is a lawsuit by a former trustee of the plan.

Second, and more importantly, Waldman's decision to sue Pitcher for breach of contract was not a "negligent act, error, or omission of yours . . . in the administration of your Employee Benefits Programs." Rather, Waldman clearly intentionally sued Pitcher for breach of fiduciary duty and thereby caused Pitcher to incur fees and expenses which he may be entitled to recover under the terms of the trust agreement.

Accordingly, the policy does not apply to the Trust Litigation.

### C. ACA Is Entitled To Judgment on Waldman's Counterclaims

Having found that ACA is not required to defend or indemnify Waldman in any of the three underlying lawsuits at issue, ACA is entitled to judgment on Waldman's counterclaim for bad faith denial of coverage. See, e.g., Hahn's Elec. Co. v. Cochran, Nos. 01AP-1391, 01AP-1394, 2002 WL 31111850, at *8 (Ohio Ct. App. Sept. 24, 2002) ("Because we have upheld Hartford's coverage decision, it was per se reasonable and thus not made in bad faith."). For the same reason, ACA is entitled to judgment on Waldman's breach of contract counterclaims.

<u>Conclusion</u>

In summary, ACA is entitled to judgment on the pleadings on Waldman's claim for defense and indemnity in all three cases as well as on Waldman's counterclaims for breach of contract and bad faith handling of his claims.  Accordingly, ACA's renewed motion for judgment on the pleadings is well-taken and is **GRANTED.**

    **IT IS SO ORDERED**

Date <u>December 18, 2013</u>       <u>s/Sandra S. Beckwith</u>
Sandra S. Beckwith
Senior United States District Judge